Good morning, Your Honor. Good morning. It pleases the Court, James Fife of Federal Defenders, on behalf of the appellant, Mr. Heraldez. I'd like to reserve two minutes for rebuttal. Mr. Heraldez was acquitted of illegal reentry because the jury accepted his defense that he was not an alien. Despite the central appearance of alienage in this case for false statement, the government claims it's not trying to take a second bite of the apple. It only wants to cut the apple up and make a pie or mash it up to make applesauce. But legally, the consequences are the same as far as collateral estoppel is concerned. The government cannot relitigate as a material part of this trial a fact which the prior jury necessarily decided against it. What difference does it make if he's an alien or not? In this particular trial, it was the central theory of materiality for the false statement. The government conceded that admissibility was the reasoning for the questioning of Agent Cadena at primary inspection. Admissibility is dependent on alienage nationality. It was also material because it was raised repeatedly in the trial, at all stages of the trial, from opening statement all the way to closing statement. Getting back to the admissibility question, at the prior trial, I think that Mr. Heraldez had indicated that there was confusion with the, I guess, INS at that time as to whether he was admissible or not, and that the reason he used the name of Herrera instead was to avoid those sorts of further disputes. And so the question whether he was an alien or not was, seems tangential to the question of was he using a false name in order to avoid disputes with the INS. So it didn't seem, and I wasn't clear why alienage per se was necessarily that significant. I think it, there was, the allegation here was that he used a false name to the agent at primary inspection. The agent, as I make further on in the argument about why the Rule 29 motion should have been granted, was the agent clearly testified without any question that the name had no materiality to his decision whatsoever. In fact, he didn't even ask for a name until after he made the decision not to admit and to refer to secondary. Really, the government's true theory of materiality, the only thing that conceivably could have been material about the questioning was whether or not he was admissible, that is, whether he was an alien. Well, clearly a false name would be material. He, if we look at it from his standpoint, he gave the false name because he thought it would be material. He did it for the purpose of misleading the government. That's why he did it. He didn't make it, but that's why he did it. Any person looking at it neutrally will say, why did he give a false name to the government? Because he thought if he lied to the government, he could avoid a problem. The government wouldn't catch the fact that he is who he is. That's why he did it. Everybody knows that's why he did it. So how can we say it's not material because the government just wasn't fooled? Your Honor, I respectfully dispute that that is absolutely clear in this case. I think some of the circumstances of this case raise a real question. He said as much. Of course it's perfectly clear. That's why he gave the false name, to avoid them tracking him under his right name. That's why he did it. He said he did it that way. Your Honor, respectfully, that's the reason he gave in the prior trial for why he initially adopted this new name. There was no testimony whatsoever in this trial about why he used a particular name at primary inspection. I mean, that's an inference that someone can draw. But also, as I said, there's some evidence to show that contrary to that inference. If someone, if he were making this very sly attempt to evade inspection, why did he come and the first thing he did was announce, I do not have identity documents? But if it's an inference that could be drawn, why can't the government argue that at this trial on 18 U.S.C. 1001? Your Honor, at the very most, that may go to the fraudulent intent required for a conviction here. It still leaves the question of what is the materiality of this statement? The materiality is he hoped to get through without having them know who he was. That's the materiality. Admissibility. That's a fair, well, whatever you want to call it. But that's what he hoped to accomplish. But, Your Honor, if the prior jury trial could not have decided that he was admissible, come on, we know that. But, Your Honor, they decided whether or not he was an alien. They decided that the government did not prove beyond a reasonable doubt that he was an alien. That does not bind a civil action in the INS to decide whether he is an alien. You know that. That's true. In the civil case, in the deportation, because of the difference in the standard of proof, that is not precluded here. But if we compare the case with Castillo-Baca, the case that we just saw. Castillo-Baca is absolutely irreverent. Castillo-Baca, the guy put on his testimony in front of the jury. The jury believed him. In Castillo-Baca, we said, because the jury believed him, you can't prosecute him for that very testimony in front of that very jury. That would be double jeopardy. This is not even close to that. Not even remotely close. This is a case where they're prosecuting for a whole new lie told a long time after the jury trial. Is it not? That's true, Your Honor. But still, alienage, the issue that was necessarily decided in the first trial, was a material fact raised and relied on by the government in this trial. And that's what I would submit Castillo-Baca says cannot be done. That collateral estoppel does not allow the government to relitigate a material fact in the second trial that necessarily was adversely decided in the first trial. Alienage is exactly such a fact. Alienage was necessary here. It was a material fact. And all that Castillo-Baca requires is that it be sufficiently material. Now, the evidence here shows it was sufficiently material because the government explicitly relied on it for the materiality element. It was brought up at every stage of the trial, from opening, and evidence, and testimony, and documents, and closing. It was brought at the Rule 29. The government argued it extensively in closing, and the judge instructed on it, and to just show that it had that due effect, the jury question indicated without any question that the jury had focused on it. What's the definition of materiality in this area? Materiality, Your Honor, the indictment limits the scope of the prosecution here to the statements that are primary. Oh, excuse me. What is the what do you consider materiality to mean as a matter of law? Oh, sorry. For the collateral estoppel issue?  It's a false statement of material fact to the government. What does materiality mean? It means it is predictably capable of altering the decision of the Federal official. Was this predictably capable of altering the decision at the border when he gave them a false name? Your Honor, in the evidence of this case ---- Assuming they didn't know already about the false name, which is irrelevant. If I give a false name at the border, let's say I'm a citizen. No question I'm a citizen, but I'm on the terrorist alert, and they've been told to stop me at the border or make me a LPR. Anyway, they've been told to stop me at the border, and I give a false name, thinking with a false name I'll get by the border. That's all. I just want to get by the border. That's all I want to do. And, by the way, they put me on the terrorist alert because I'm a member of the ACLU. So it's a bad rap. Right? So I guess. Let's not go there. We'll stipulate. Okay? So all I do is I give a false name just to get by the border. That's it. For the purpose of misleading them so they can't stop me. Is that material? I understand the argument, Your Honor, and I can see that. The argument is a question. Is that material? I would say that it's potentially material. That could argue. Even if they know about my false name because somebody's ratted me out. That could potentially be material, Your Honor. But I would point out that this is exactly like the situation Judge Easterbrook talked about in Fiat where he said, yes, now that we think about it, we can see a reason why it might be material. But as Judge Easterbrook said, no one at trial said that. And that's exactly the situation here. No one at trial said what the materiality of the false name was. The only testimony in the trial here about the use of the name was that it was completely irrelevant to the decision Agent Cadena made. That was the only decision alleged. That was the only Federal official alleged in the indictment. It was the only falsehood that was alleged in the indictment. The scope of this prosecution was restricted by the indictment as found by the grand jury, and no evidence showed that any of that statement was material to that particular decision. I believe I still have some time. Shall I go on to the materiality or? Just briefly about materiality, the failure to grant the Rule 29 motion. Agent Cadena's, again, his testimony showed that it was not material. I would, again, direct the Court's attention to the Ambach decision of Facchini. I believe this is a Facchini's extremely important decision because it has, like a laboratory experiment, it has two types of material statements side by side. And it shows that one type of false statement was not material because it had no predictable ability to affect the decision at all, whereas the other set of decisions, even the other set of statements could affect a certain expenditure. It must be a nontrivial use. That's specifically stated in Facchini. Here, the only use of the false name was trivial to facilitate the referral to secondary. That's the only evidence that was provided for that. As is shown in the Fourth Circuit case in Ismail and in the Seventh Circuit case in Piat, a decision further down the line by another Federal official does not suffice. There must be an immediacy, a direct link between the false statement, cause and effect, between the false statement and the immediate decision that's made by the Federal official. The fact that some other Federal official somewhere else may use that information for another decision was not found sufficient in those cases. And I would say that was also consistent with the holding of Facchini. Because, in fact, in Facchini, a decision was made on the statements that were found immaterial because some Department of Labor official had to allot a certain amount of money to the State for these unemployment claims. Despite the fact that a decision actually was made on the basis of those false claims, they were still immaterial as far as the Court was concerned. I have a quick question about the sentencing aspect of the case. Certainly. And I just wanted to be sure that the sentencing piece wasn't moot. The release date that's stated in the briefs is May 16th, and we're quickly coming up on that. And sometimes people are released early. Is that piece of it? Mr. Harrell is still in custody. He is still in custody. Yes. Okay. Thank you. I also apologize for the late filing of this last 28J, but when I discovered that Jung had been amended a week after I filed the original 28J, I certainly wanted to alert counsel and the Court about the fact that the way I was citing it in the original letter was no longer justified by the new amended language. I still believe that Jung is relevant to this case because it shows that the Court must look at the broader context of the statement, not just the statement itself. The broader context here is that Mr. Haldas was making a good faith. His defense was he was making a good faith use of this name, that this is a common law name change he had made some years ago and used with good faith. There was a mutual awareness of immigration and Mr. Haldas that the names related to the same person. And, again, as I referred to, the very lameness of this attempt shows that there could not have been much of an intent to deceive. Jung says that that's exactly the use that the mutual awareness can go to in this case, is to show that there was no intent to deceive. As to the constructive amendment argument, if I can mention that briefly. Well, I see a run-in to my time, so maybe I'll reserve this. We have about a minute and a half left if you'd like to reserve the remainder. We'll hear from the government. Thank you. Steve Miller for the United States. After all the preparation and crafting of responses, I've come to the inescapable conclusion that the most effective advocacy in this case is what he said. Some of the arguments that counsel made I addressed in my brief. I just can't comprehend some of the logical following. And with regard to your sentencing inquiry, I'd also point out that I've not checked the Bureau of Prisons website, but that projection also includes the defendant's 15% reductions. So in case something happens, there should be no impediment for him to be released on that day. With that, first of all, with the double jeopardy and collateral estoppel issue, the collateral estoppel is not a bar, is not blanket immunity to the admission of irrelevant evidence. And in this case, the evidence of his alienage was relevant and it was admissible, and it was not relitigated in this case. The government and the court took repeated affirmative steps to advise the jury that the defendant was not, that there was no decision and that whether or not he was an alien was not relevant in this case. The only reason that the court had to respond to the jury question in the way it did was because the defendant made misrepresentations about the effect of the acquittal. He made affirmative representations. He is a U.S. citizen. The jury found that he's a U.S. citizen, and the court had to clarify that point for them. Nor does the ñ nor was there any litigation of a necessary issue in the first trial that was necessarily decided in the second trial. That he was an alien was admissible and relevant under a lower standard of proof because it showed that the defendant had the intent to deceive, that he knew that it was false. And the fact that he came in and said, I'm a U.S. citizen, my name is Esteban Holguin, when he had a document in his pocket that said that he was Geraldo Martinez, showed that he had motive. And it was pointed out to the jury in opening statement that, yes, there is a dispute whether or not he is an alien, but the problem in this case is that he did it incorrectly. Instead of coming up and saying, my name is Geraldo Holguin, you deported me, I would like the opportunity to be admitted into the country and dispute that. But because of his use of the false name, he attempted to deprive the government official of perfected information to make an informed decision. And that was the materiality. Whether he was an alien or whether he was a U.S. citizen was not central to the jury's decision. The problem was that it had the intrinsic capacity to influence or capable of influencing the government official. And one of the things about the primary inspection at the board, it's a right of first refusal. It's okay for a deported alien to come to the court and apply for entry as long as he says, I'm a deported alien, and that he provides the inspecting officials the proper information so they can make an informed decision. But if you attempt to deceive, then that's a crime, and that's what happened in this case. With regard to materiality, the law does not require that the defendant be successful in his deception. That would kind of defeat the entire purpose of criminalizing false statements. And the case has clearly established that there is no but-for requirement. There need not be any causal connection between the false statement and the subsequent government action. And that was probably most clearly demonstrated in the Salinas-Ceron case, where the agents contacted the defendant and asked him a question. Asked him a question they already knew the answer to. Do you have any more money over $10,000? And their decision was already made up. They knew that this guy had $804,000 in the suitcase. But when he said no, that didn't influence their decision. They already made up their mind. But it was still material because they had the capability of influencing the official decision. Can I ask you a couple of sentencing questions? Yes, sir. I'm a little troubled by the allocution issue. It looked to me like the district court, I won't say arbitrarily, but the district court, after listening to some of this guy's talk, just says basically, shut up. The end. He never says, you know, you're getting off point, Mr. Giraldo, you're sort of wandering off into never, never land. Come back to this thing and talk to me about mitigation if you want to. He just says, shut up. I'm going on with this. He didn't say, shut up. Well, he said, shut up later. When he said, wait a minute, I'm not finished, he said basically, shut up or I'll send you out of the courtroom. Yes. Well, the government does not dispute that the defendant has the right of allocution. And he was afforded the right of allocution. The court asked him at the beginning, do you have anything to say? And then he then exercised his right of allocution. And he went right through all the mitigating points, which are essentially, I'm right, they're wrong, I did nothing wrong. But he had the opportunity, and he addressed it during his three or four pages of allocution. But he started becoming disruptive. And though there is no dispute that he every time he was being disruptive while he was allocuting, he was just talking, it looks like. Are you saying the record, we should assume he was being disruptive? I think the court just got sick of listening to him, which, you know, might be understandable. But because we're sick of listening, it doesn't mean we can stop him. Oh, I understand that. But he was going off on tangents. He touched on all the necessary points about mitigating the sentence. But when he started getting into pointing to me and calling me a kidnapper, he got to the point where actually this Court can say that he waived his right of further allocution. What page are you looking at when you say that? I'm looking at 424, when he invited further comment. And the tone and the volume are not reflected on here, but the language you can tell. He then invited further comment. He challenged the INS. What are you looking at here? Line 15. If they claim that I'm an alien, bring it on. Prove it. I proved I'm not an alien last year. Now they want to continue to do that and harass me and punish me for things that I've never done. Prove it. Prove it. And right at that point, when he challenged the INS to prove what he had disputed in his immigration hearing, then the Court interrupted him. It says, okay, let me stop you here and invite comment by Mr. Miller. And we're never going to let you comment again. That had to the defendant been a little less disruptive, because you obviously you cannot really get the tone and the volume of the comments. But in calling me and others perjurers or the case agent perjurers and me a kidnapper, and then within the context of his subsequent attempts to interrupt the Court, me, and his own attorney, I think that we can fairly deduce that Mr. Heraldez was purposely disruptive. And had he been allowed, he would have gone on forever, continuing about not so much. Once he has made his point that I'm right, you're wrong, I did nothing wrong. Well, if it's true, you can understand his outrage. I mean, we don't really know on this record whether it's true or not, whether he, I mean, because citizenship was not an issue in this trial. That's true. And during his counsel's statements, and I only remember this. I don't know what the page is. He interrupted her, and she made a point, and I did not dispute it. I said, Your Honor, I believe that you can tell that he feels pretty strongly about this issue. And I did not dispute that. I mean, the government did not dispute that he feels very strongly for it, and rightfully so. But the disruptive nature and the nature of the comments that he was making during his allocution that the Court really properly cut him off at the time. One other quick sentencing question. The district judge here seemed to make it pretty clear that he presumed the guideline sentence would be appropriate. We had a case called Zavala where we said, Nope, you can't go presuming. Zavala gone on bonk. And that issue, I think, is also in front of the U.S. Supreme Court right now. What should we do with that, in your view? Well, I think that within the context of what the arguments were made in the comments at sentencing, the use of presumptive or presume was an unfortunate use of that word. But in the other comments before that, I think he pretty clearly indicated that the use of the because the government's recommendation was five years, and it was only five years because that was a statutory limit. And the basis of that was because he was an incorrigible recidivist, that there was nothing that we could possibly do to ever deter him from future misconduct like this before. And he was so bold about it, about saying, I lie about my name, and I'm going to do it again, that when examining the reasonableness, overall reasonableness of the sentence, that we can pretty fairly conclude that the guidelines limited the extent of Mr. Giroldo's sentence in this case. Are there any other questions? I don't believe so. Thank you. Thank you. Mr. Fife, I think you have some rebuttal time that remains. Yes. Thank you, Your Honors. I have like four very brief bullet points to make. First of all, as it regards the allocution issue, I invite the Court to look again at the case Mack, which was cited in the brief. In Mack, the Court, as Judge Fernandez indicated, took some sort of remedial intermediate step first before cutting them, cutting the defendant off. He asked them to come back to the point because they were wandering off the point. And then when it looked like they were going to go on for a while, he invited one of the defendants to submit material in writing, and the judge would consider it. Neither one of those steps were taken here. Didn't Mr. Giroldo submit some information in writing, though? He did. He did have a pro se written submission as well. But as a remedy, if the Court really felt pressure on its calendar to move along and let counsel talk, he could have, again, invited Mr. Ralles to finish off his allocution in writing if he really felt necessary to do that. The judge here didn't give him that option. So, again, it was very precipitous cutting off of the allocution. As regards going back to the collateral estoppel one last time, I wanted to just say I recently cited Weems, which I think is very parallel here. First of all, counsel argued that collateral estoppel does not preclude evidence. It's not an evidentiary rule. Weems says just the opposite. It says on page 531, collateral estoppel can limit the evidence the government may introduce in a criminal prosecution.  Counsel said that the jury question was the effective defense argument. In fact, Weems also says that preclusion does not apply to the prevailing party. Mr. Ralles was perfectly free to argue the meaning and substance of the acquittal. In any case, the government never objected to that as being a misstatement of the law. And finally, when Mr. Miller mentions that this was motive, again, in Weems, that was precisely the use of the precluded issue that the Court here found. It was being used as motive. As they put it, significantly bolstered the government's case by providing a reason why the defendant might have illegally structured the currency transactions. It was motive. Motive does not, use as motive does not mean that it's not a material issue that's precluded under collateral estoppel. Thank you. The case just argued is submitted. We appreciate very much the arguments of both sides. They've been helpful. And we are adjourned for this session. All rise. This Court for this session stands adjourned.
judges: Fernandez, Graber, Ikuta